## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CRAIG CUNNINGHAM,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:16-CV-2120-G-BK** |
| | § | |
| **CARLOS FELIX, et al.,** | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, *Defendants' Motion for Summary Judgment* filed by Carlos Felix and Adam Albritton, Doc. 27, is before the Court for findings of facts and a recommended disposition. Upon review of the parties' arguments, the evidence of record, and the applicable law, Defendants' motion should be **GRANTED**.

## I. BACKGROUND

*Pro se* plaintiff Craig Cunningham filed this civil rights action under 42 U.S.C. § 1983 against employees of the Texas Department of Public Safety ("TDPS") arising from a January 2016 traffic stop ("the Incident"). *See* Doc. 17. The parties agree that, while driving, Plaintiff properly signaled a lane change, yet was pulled over by Texas State Troopers Carlos Felix and Adam Albritton (collectively, "the Troopers"). Doc. 17 at 2; Doc. 27 at 6. Plaintiff was questioned and, ultimately, only given a warning for failing to use a turn signal to change lanes. Plaintiff subsequently lodged complaints with the TDPS via phone and written submission, claiming that the traffic stop was improper. Doc. 27-2 at 3, 13-15. The Troopers' supervisors, Bobby Nichols, Thomas Moore, Michael Bradberry and Kevin Gray, investigated Plaintiff's complaint. Doc. 27-2 at 2-7. In May 2016, Plaintiff was notified of the result of the

investigation, namely that Plaintiff had properly signaled his lane change and the Troopers erred in initiating the traffic stop. Doc. 27-2 at 2.

In July 2016, Plaintiff filed his *Original Complaint* alleging that the Troopers, the supervisors involved in the investigation of his administrative complaint, and Steven McCraw, the director of the TDPS, violated his rights under the Fourth, Fifth, and Fourteenth Amendments. Doc. 3 at 1-2, 6-7. In March 2017, the Court dismissed all of Plaintiff's claims, except his Fourth Amendment claims against the Troopers. Doc. 15 at 10-11; Doc. 16. Subsequently, in April 2017, Plaintiff filed his *First Amended Complaint* asserting only claims against the Troopers for violating his Fourth Amendment rights. *See* Doc. 17. In August 2017, the Troopers filed the instant motion for summary judgment on the basis of qualified immunity. Doc. 27. Plaintiff filed a response, Doc. 35. The Troopers did not file a reply.

## II. APPLICABLE LAW

### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute regarding a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsubstantiated beliefs are not competent summary judgment evidence. *de la O v. Housing Auth. of City of El Paso, Tex.*, 417 F.3d 495, 502 (5th Cir. 2005). Further, a court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citation and internal quotation marks omitted).

**B.**     **Section 1983 & Qualified Immunity**

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). To prove a claim under section 1983, a plaintiff must establish that (1) he was deprived of a right secured by the Constitution and the laws of the United States, and (2) the defendant was acting under color of state law. *See Flagg Bros., Inc. v. Brook*, 436 U.S. 149, 155 (1978).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the plaintiff has adduced sufficient evidence to raise a genuine issue of material fact suggesting that the defendant violated an actual constitutional right, and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. A court can begin its assessment with either prong. *Id.* at 236 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)). However, a negative answer to either question entitles a defendant to qualified immunity. *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 490 (5th Cir. 2005) (citation omitted).

3

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once an official asserts a qualified immunity defense, the burden shifts to the plaintiff to rebut the defense by establishing a material fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.* While a plaintiff bears the burden of negating qualified immunity, all inferences are drawn in his favor. *Id.*

### III. ARGUMENT & ANALYSIS

The Troopers move for summary judgment as to Plaintiff's Fourth Amendment claim, arguing that their mistaken belief that Plaintiff failed to signal his lane change was objectively reasonable and did not result in any injury to Plaintiff "beyond 11 minutes of mere inconvenience." Doc. 27 at 7-8. In response, Plaintiff argues that summary judgment should be denied because (1) the Troopers' dash-cam video footage (submitted with the motion for summary judgment) coupled with the explanation of their mistake shows that they lacked reasonable suspicion to initiate a traffic stop, and thus violated his Fourth Amendment rights; and (2) since it was clearly established at the time of the Incident that a traffic stop must be predicated on reasonable suspicion, the Troopers' actions were objectively unreasonable. Doc. 35 at 4-6.

**A.    Plaintiff failed to adduce sufficient evidence to raise a genuine issue of material fact suggesting that the Troopers violated his Fourth Amendment rights.**

Among the guarantees of the Fourth Amendment of the United States Constitution is the right to be free of unreasonable searches and seizures. U.S. Const. amend. IV. A temporary detention attendant to a traffic stop by police is a "seizure" of the occupants and the vehicle within the meaning of the Fourth Amendment, *Heien v. North Carolina*, 135 S.Ct. 530, 536

(2014) (citation omitted), "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (citations omitted). Such a seizure is justified if the officer has "a particularized and objective basis for suspecting the particular person stopped" is breaking the law, i.e., "reasonable suspicion." *Heien*, 135 S.Ct. at 536 (quoting *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014)). While reasonable suspicion may be predicated on a mistake of fact, the mistake must be objectively reasonable. *See id.* Ultimately, when considering the validity of a traffic stop, courts are to examine "the totality of the circumstances – the whole picture." *United States. v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002) (quoting *United States. v. Sokolow*, 490 U.S. 1, 7-8 (1989)).

Plaintiff has failed to present evidence demonstrating that the Troopers' mistake of fact, i.e., their belief that Plaintiff did not signal his lane change, was not objectively reasonable. *Brown*, 623 F.3d at 253. As stated above, the Troopers do not contest what the dash-cam footage clearly shows, to-wit: that Plaintiff signaled his lane change in advance of doing so. *See* TEX. TRANSP. CODE ANN. § 545.104(a) ("An operator [of a vehicle] shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position."). However, the video also shows that Plaintiff's turn signal blinked only twice in less than two seconds, and was turned off before he began his lane change to the right. The Troopers attribute their mistake to the fact that neither of them was looking at Plaintiff's vehicle when he initiated his turn signal and began his lane change. Trooper Felix, who was driving, avers he did not see the turn signal because he was "looking in [his] side rearview mirror, and check[ing] the speed of the approaching vehicles behind [him] with [his] rear radar." Doc. 27-2 at 10. Trooper Albritton states that he was not watching Plaintiff's vehicle and Trooper Felix, whom he was training,

alerted him that he had witnessed the purported traffic violation.[1]  Doc. 27-2 at 8.   The Troopers both state that they saw Plaintiff's vehicle when it was halfway into the right lane, by which time, Plaintiff's turn signal was already off.  Doc. 27-2 at 8, 10.

Given that Plaintiff's signal was engaged for less than two seconds and disengaged prior to his movement into the right lane, it was reasonable for the Troopers to believe that Plaintiff had failed to use his turn signal while changing lanes.  The reasonableness of the Troopers' mistake is all the more apparent in light of: (1) the rapidly evolving circumstances inherent in a traffic stop; (2) the Troopers' need to continually observe the conditions around them, including the other traffic; and (3) the fact that it was nighttime and there was minimal lighting when the Incident occurred.  Under these uncontroverted facts, the Troopers had reasonable suspicion, albeit mistaken, to believe that Plaintiff had not used his turn signal while changing lanes.  Thus, their actions did not violate Plaintiff's Fourth Amendment rights.  *Heien*, 135 S.Ct. at 536.

The law does not demand perfection from police officers.  *See Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992) (stating that police officers are not required to be "perfect" nor do they have to err on the side of caution "out of the fear of being sued") (citation omitted).  Indeed, as stated above, the doctrine of qualified immunity gives government officials "ample room" to make reasonable but mistaken judgements, and protects all but the plainly incompetent or those who knowingly violate the law.  *Malley*, 475 U.S. at 341.  In view of the "totality of the circumstances," Plaintiff has failed to demonstrate that the Troopers' conduct was not plainly incompetent or a knowing violation of the law.  *Id.*; *Chavez*, 281 F.3d at 485.  And because Plaintiff has failed to present competent evidence from which it can be inferred that the

---

[1] At the time of the traffic stop, Trooper Felix was in week 24 of his training program.  Doc. 27-2 at 8.

Troopers' mistaken belief that Plaintiff failed to signal a lane change was unreasonable, the

Troopers are entitled to qualified immunity. *Stidham*, 418 F.3d at 490.

## IV. CONCLUSION

In light of the foregoing, *Defendants' Motion for Summary Judgment*, Doc. 27, should be

**GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE**. This case should

then be closed.

**SO RECOMMENDED** on February 14, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner
provided by law. Any party who objects to any part of this report and recommendation must file
specific written objections within 14 days after being served with a copy. *See* 28 U.S.C.
§ 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific
finding or recommendation to which objection is made, state the basis for the objection, and
specify the place in the magistrate judge's report and recommendation where the disputed
determination is found. An objection that merely incorporates by reference or refers to the
briefing before the magistrate judge is not specific. Failure to file specific written objections will
bar the aggrieved party from appealing the factual findings and legal conclusions of the
magistrate judge that are accepted or adopted by the district court, except upon grounds of plain
error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996),
*modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to
fourteen days).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE